# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANASTASIA PHILLIPS | ) | 3:19-CV-01081 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | September 25, 2020 |
| *Defendant*. | ) | |

## MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER OR TO REMAND TO THE COMMISSIONER (ECF NO. 18) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 19)

Kari A. Dooley, United States District Judge

Anastasia Phillips ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for child's insurance benefits ("CIB") pursuant to Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. § 402(d). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand the case to the agency because the Administrative Law Judge ("ALJ") (1) improperly weighed medical opinion evidence and (2) failed to include relevant factors in his determination of Plaintiff's residual functional capacity ("RFC"). The Commissioner opposes Plaintiff's claims and moves to affirm the decision. For the reasons set forth below, the Plaintiff's motion to reverse or to remand is GRANTED in part and the Commissioner's motion to affirm is DENIED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination thereof that "must have lasted or must be expected to last for a continuous period of at least 12 months"; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's RFC to perform her past relevant work; and (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of her RFC and her education, age, and work experience. *Id*. §§ 404.1520 (a)(4)(i)-(v); 404.1509. The claimant bears the burden of proof with respect to Step One through Step Four, while the Commissioner bears the burden of proof as to Step Five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). It is well-settled that a district court will reverse the decision of the Commissioner "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted). "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (quotation marks and citation omitted). Stated

simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**Procedural History**

On July 28, 2014, Plaintiff filed an application for CIB alleging an onset date of March 9, 2014. Her claim was initially denied on January 23, 2015 and upon reconsideration on July 2, 2015. Thereafter, a hearing was held before an ALJ on November 21, 2016. On December 23, 2016, the ALJ issued a written decision denying Plaintiff's application. On March 14, 2018, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, vacated the ALJ's decision, and remanded the Plaintiff's case to the ALJ. The ALJ held another hearing on July 17, 2018 and, once again, denied Plaintiff's application by written decision on July 27, 2018.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 9, 2014. At Step Two, the ALJ determined that Plaintiff had medically determinable severe impairments consisting of attention deficit hyperactivity disorder, depressive disorder, and anxiety disorder. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step Four, the ALJ determined that the Plaintiff had the following RFC:

> [Plaintiff has the RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple, routine, repetitive tasks. [Plaintiff] can sustain concentration, persistence, and pace for two-hour segments. [Plaintiff] can have brief and superficial interaction with coworkers and no interaction with the public. [Plaintiff] can have work with little/no changes in duties/routines. [Plaintiff] can have no work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others) and no work at production line pace.

R. 24. The ALJ further found that Plaintiff had no past relevant work. At Step Five, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform given the limitations identified in the RFC. Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged onset date through the date of the decision within the meaning of the Act.

On May 15, 2019, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's July 27, 2018 decision final. This appeal followed.

**Discussion**

Plaintiff is a young person who has struggled with various mental health issues for many years, to include depression, anxiety and attention deficit hyperactivity disorder. Her traumatic and chaotic childhood included a suicide attempt when she was in the 8th grade, and a hospitalization due to suicidal ideation several years later. Fortunately, there has been no significant recurrence of such ideation in recent years, but her mental health diagnoses continue to affect her everyday life. The question for the Commissioner was simply, to what extent? Although she is well-educated having recently completed her bachelor's degree, Plaintiff claims that her mental illness is so debilitating as to prevent her from working. In this appeal, Plaintiff argues that the ALJ failed to appreciate her deteriorating condition and to consider several limitations including her off-task and distracting behavior, absenteeism, and insubordination. Specifically, Plaintiff argues that the ALJ erred by (1) improperly weighing medical opinion evidence and (2) failing to include additional limitations in her RFC. For the reasons that follow, the Court remands this matter to the Commissioner for further consideration and subject to the directives herein.

**Weighing of Medical Opinions**

Plaintiff argues that the ALJ erred by (1) failing to assign controlling weight to the opinions of Dr. Richard Maiberger, a treating physician, (2) assigning great weight to the non-examining State agency consultants' opinions, and (3) failing to consider the opinion of APRN Ryan Dillon, another treating source.[1]

### *Dr. Richard Maiberger*

Dr. Maiberger, Plaintiff's treating physician from April 30, 2015 through March 23, 2016, submitted two impairment questionnaires regarding the effect of Plaintiff's mental impairments on her ability to work. Dr. Maiberger completed the first questionnaire on April 30, 2015, R. 480–84 (hereinafter, "April 2015 opinion"), and the second questionnaire on November 2, 2016, R. 588–90 (hereinafter, "November 2016 opinion"). The ALJ assigned partial weight to the April 2015 opinion accepting some of Dr. Maiberger's findings and rejecting others. Those he accepted were incorporated into the RFC. Specifically, the ALJ accepted Dr. Maiberger's findings regarding Plaintiff's limitations handling frustration and interacting with others. R. 28. He also accepted Dr. Maiberger's finding regarding Plaintiff's ability to perform short and simple tasks at a reasonable pace. R. 28. However, the ALJ rejected Dr. Maiberger's finding that Plaintiff was limited in her ability to focus long enough to complete short and simple tasks because that finding was inconsistent with other clinical findings for intact memory and concentration. R. 28 (citing R. 558).

The ALJ assigned little weight to the November 2016 opinion because the findings therein "veer, considerably, from the findings from the [April 2015 opinion]." R. 28. Specifically, the ALJ noted that the November 2016 opinion "cites to no ability to maintain attention for two-hour segments," while the April 2015 opinion includes a finding "that the [Plaintiff] could perform

---

[1] Because the Court finds that this matter must be remanded for the reasons discussed herein, the Court need not decide whether the ALJ erred in failing to consider APRN Dillon's opinion.

simple tasks at a reasonable pace." R. 28. Moreover, the ALJ concluded that the findings regarding Plaintiff's inability to work in coordination with others or to complete a workday or workweek without significant interruption from psychological symptoms (1) "[do] not factor the [Plaintiff's] academic performance" and (2) "contrast with the actual treatment notes showing that the [Plaintiff] had intact attention/concentration and good judgment/insight." R. 28 (citing R. 561).

By failing to assign controlling weight to Dr. Maiberger's opinions, Plaintiff argues that the ALJ violated the "treating physician rule." The applicable version of the regulation from which the so-called "treating physician rule" derives required the ALJ to confer "controlling weight" on medical opinions from Plaintiff's "treating sources," so long as those opinions "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) [are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2);[2] *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*) ("[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," except where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." (citation omitted)). "Treating source" is defined as an "acceptable medical source" who has provided the Plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the Plaintiff.]" 20 C.F.R. § 404.1527(a)(2).

---

[2] On January 18, 2017, the Social Security Administration promulgated final rules that significantly change the way the Commissioner considers medical opinion evidence and that were made effective March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulation, 20 C.F.R. § 404.1520c, applies only to claims filed on or after March 27, 2017. Accordingly, because the Plaintiff's claim was filed before this date, this Court applies the regulations in effect prior to March 27, 2017.

"If a treating source's opinion is <u>not</u> given controlling weight, 'SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive.'" *Consiglio v. Berryhill*, No. 3:17-CV-00346 (SALM), 2018 WL 1046315, at *4 (D. Conn. Feb. 26, 2018) (quoting *Greek*, 802 F.3d at 375). "'To override the opinion of the treating physician, . . . the ALJ must explicitly consider, <u>inter alia</u>: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Consiglio*, No. 3:17-CV-00346 (SALM), 2018 WL 1046315, at *4 (quoting *Greek*, 802 F.3d at 375). "However, a 'slavish recitation of each and every factor' is unnecessary 'where the ALJ's reasoning and adherence to the regulation are clear.'" *Consiglio*, No. 3:17-CV-00346 (SALM), 2018 WL 1046315, at *4 (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)).

Here, the Court finds that the ALJ did not err in assigning less than controlling weight to Dr. Maiberger's opinions because they are inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Barnhart*, 362 F.3d at 32. Indeed, Dr. Maiberger's own treating notes undermine his findings regarding Plaintiff's inability to concentrate and to complete a workday or workweek without significant interruption from her psychological symptoms. *See Harrison v. Berryhill*, No. 16-CV-7220 (KMK), 2019 WL 580748, at *8 (S.D.N.Y. Feb. 13, 2019) ("An ALJ acts reasonably . . . in discounting a treating physician's opinion based on a finding that the opinion was inconsistent with the physician's own treatment notes."). Throughout his treatment of Plaintiff, Dr. Maiberger repeatedly indicated that Plaintiff exhibited "good" judgment and insight and that her memory, attention, and concentration were "intact." *See* R. 514 ("Psychiatric Specialty Examination" dated April 30, 2015); R. 538 ("Psychiatric Specialty

Examination" dated June 10, 2015); R. 543 ("Psychiatric Specialty Examination" dated July 23, 2015); R. 548 ("Psychiatric Specialty Examination" dated September 22, 2015); R. 553 ("Psychiatric Specialty Examination" dated November 3, 2015); R. 558 ("Psychiatric Specialty Examination" dated December 29, 2015); R. 561 ("Psychiatric Note" dated March 23, 2016). Such indications support the ALJ's conclusion that Dr. Maiberger's opinions, insofar as they suggest Plaintiff's inability to concentrate or to complete a workday/workweek without significant interruption, are not entitled to controlling weight.[3]

The record also attests to Plaintiff's academic success. Medical records from March 13, 2014 indicate that Plaintiff was a senior at Norwalk High School ("NHS") who took advanced placement classes and planned to attend Norwalk Community College ("NCC"). R. 453. While at NHS, other records indicate that Plaintiff, at least at times, achieved a 3.9 GPA. R. 486. Thereafter, Plaintiff successfully obtained her associate's degree from NCC and participated in the school play. R. 512 (notation dated April 30, 2015 – "[P]atient is currently a full-time student at [NCC] . . . The patient is currently involved in the school play at NCC and seems to be enjoying that."); R. 529 (notation dated May 7, 2015 – "Presently attends NCC – reports getting good grades, participates in their dramatic productions."); R. 535 (notation dated June 10, 2015 – "[Plaintiff] achieved a 3.7 cumulative QPI for 2 semesters at NCC. [S]he is pleased with that but feels like she could have done better. [S]he did participate in the school play."); R. 545 (notation dated September 22, 2015 – "[Plaintiff] reported on a very busy schedule of 18 credits at [NCC] plus work plus drama at the college."); R. 555 (notation dated December 29, 2015 – "[Plaintiff] reports

---

[3] Although not identified by the ALJ as part of his analysis, it is worth noting that Dr. Maiberger had not seen the Plaintiff for six months at the time he filled out the November 2016 impairment questionnaire and the opinions contained therein are inconsistent with his last treatment note from March 2016 which reflects that memory and concentration were intact. R. 561. In addition, the November 2016 opinion appears to be based, at least in part, on the report of the Plaintiff's aunt made to Dr. Maiberger at or about the time he completed the questionnaire. R. 590. To that extent, it would not have been an opinion based upon his treatment of the Plaintiff at all.

that she is finishing her semester at NCC. She has plans to get her [associate's degree] after the spring semester and to go to UConn Storrs in the fall."); R. 561 (notation dated March 23, 2016 – "[Patient] reported that she is very active in a musical at [NCC] . . . She is part of an ensemble and will do one solo."). According to Plaintiff and her attorney, Plaintiff then attended UConn before transferring to Southern Connecticut State University ("SCSU") and completing her bachelor's degree in Communication Disorders. R. 120, 122–23. Plaintiff also testified that she planned to seek a master's degree in Communication Disorders at SCSU. R. 126. As noted by the ALJ, the Plaintiff's "academic accomplishments speak to her ability to perform (at the very least) short and simple tasks and sustain focus for such tasks." R. 27. For that reason, her accomplishments also add to the substantial evidence supporting the ALJ's decision to assign less than controlling weight to Dr. Maiberger's opinions.

Plaintiff also argues that the ALJ should not have used her academic accomplishments to undermine Dr. Maiberger's opinions. Instead of focusing on her accomplishments, Plaintiff points to other parts of the record indicating that she struggled with her symptoms, including inattentiveness and panic attacks, in school. *See* R. 631 (notes from March 25, 2018, also indicating that "[symptoms] are getting worse [with] school"). Though, despite these issues, Plaintiff graduated from SCSU. R. 120, 122–23. Thus, while Plaintiff suggests that her school-related issues speak to her inability to work, they similarly speak to her ability to persevere. Accordingly, the Court finds no error in the ALJ's use of Plaintiff's academic accomplishments to question Dr. Maiberger's opinions regarding Plaintiff's ability to work.

Lastly, the ALJ's decision to assign less than controlling weight to Dr. Maiberger's opinions is further supported by the findings of Dr. Kelly Trusheim, the consultative examiner. Although Dr. Trusheim conducted her examination of Plaintiff on January 13, 2015, before Dr.

Maiberger treated Plaintiff, Dr. Trusheim's findings indicate that Plaintiff had the ability to maintain an appropriate level of focus and concentration despite her inattention issues. For example, Dr. Trusheim found that Plaintiff's psychiatric problems do "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." R. 469. Moreover, Dr. Trusheim found that there was "no evidence of limitation in [Plaintiff's] ability to maintain a regular schedule or learn new tasks" and that she was only "mildly limited in her ability to maintain attention and concentration." R. 469. In fact, Dr. Trusheim conducted a mental status examination in which she found that Plaintiff's "[a]ttention and concentration was intact" as Plaintiff was able to perform simple calculations and count backwards from 20 by 3s. R. 468.

Notwithstanding, Plaintiff argues that, at the very least, Dr. Maiberger's November 2016 opinion should be afforded controlling weight because both it and the record as a whole reflect a worsening of her symptoms over time. As support, Plaintiff points to treatment notes from 2019, which were not considered by the ALJ, indicating that she suffers from, for example, "paranoid thoughts," "gender dysphoria," and "persistent sadness." R. 8–9. Plaintiff also points to treatment notes from February 2016 indicating that Plaintiff was suffering from various issues including depression, isolation, low self-esteem, and easy aggravation. R. 526. While these treatment notes may support Dr. Maiberger's opinions, they are still "not consistent with other substantial evidence in the record[.]" *Barnhart*, 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Accordingly, the Court finds that the ALJ was entitled to assign Dr. Maiberger's opinions less than controlling weight.

### *State Agency Consultants*

In formulating Plaintiff's RFC, the ALJ gave "**great weight** to the nonexamining opinions of the State agency consultants who opined that [Plaintiff] could perform the reduced range of unskilled work." R. 28 (emphasis added). Specifically, the ALJ accepted that Plaintiff "can perform short and simple tasks and that she can sustain concentration, persistence, and pace for such tasks" even while requiring "limited social interaction." *Id*. The ALJ noted that the State agency consultants' findings were consistent with that of the consultative examiner and Dr. Maiberger's April 2015 opinion. *Id*. However, Plaintiff argues that the State agency consultants' opinions are entitled to less weight because they are inconsistent with later records, which reflect a deterioration in Plaintiff's condition. The Court agrees that the trajectory of the Plaintiff's condition appears to be worsening and that the records which post-date the non-examining consultative opinions reflect as much.

"The Second Circuit has recognized that '[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of a treating source.'" *Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *6 (D. Conn. Mar. 27, 2017) (quoting *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993)). However, "the ALJ is entitled to give the opinions of non-examining sources more weight than those of treating or examining sources where there is record evidence to support such a determination." *West v. Berryhill*, No. 3:17-CV-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019); *see also Worthy*, 2017 WL 1138128, at *6 ("Social Security regulations . . . 'permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record.'" (quoting *Schisler*, 3 F.3d at 568)). "Nonetheless, the ALJ may not credit a non-examining physician's opinion over that of a treating physician's *where the*

*non-examining physician's opinion considered less than the full record and the subsequent medical evidence may have altered the opinion.*" *West*, 2019 WL 211138, at \*5 (emphasis added).

Here, agency consultant Dr. Kelly Rogers' opinion is from January 2015 and Dr. Lindsay Harvey's opinion is from July 2015. R. 174, 186. As a result, neither had the benefit of reviewing, among other records, most of Dr. Maiberger's treatment notes or his November 2016 opinion or APRN Dillon's opinion or treatment notes. Indeed, it appears that only Dr. Harvey, in her July 2015 opinion, was able to review Dr. Maiberger's April 2015 opinion and April 2015 treatment notes. R. 182. Therefore, the record includes additional evidence that may have altered the agency consultants' opinions. For example, treatment notes from May 7, 2015 indicate that Plaintiff's immediate, recent and remote memory was defective, her insight was fair, and her judgment was poor. R. 530–31. Treatment notes also consistently indicate that Plaintiff suffered from "inattention symptoms" and that Plaintiff was prescribed medication to target inattention, among other issues. *See* R. 544 (notes from July 23, 2015); R. 549 (notes from September 22, 2015); R. 554 (notes from November 3, 2015); R. 559 (notes from December 29, 2015). Further, Dr. Maiberger's November 2016 opinion notes that Plaintiff's ability to maintain attention for a two-hour segment was poor and that she would be absent from work more than twice a month. R. 589–90. APRN Dillon's treatment notes also highlight Plaintiff's inattention issues. For example, on May 25, 2018, APRN Dillon lists Plaintiff's ADHD symptoms as follows: "[i]nattention, [d]isorganization, [d]ifficulty completing/following through, [c]areless mistakes." R. 631. Additionally, APRN Dillon's July 13, 2018 opinion notes that Plaintiff only had a fair, i.e., seriously limited but not precluded, ability to maintain attention for a two-hour segment, to complete a normal workday and workweek without interruptions, and to maintain regular attendance and be punctual within customary, usually strict tolerance. R. 37. APRN Dillon further opined that the Plaintiff would be

absent about one day per month due to her psychiatric condition, depending on the job, R. 38, an opinion, which if accepted, could impact employability, *see* R. 160–61 (testimony of vocational expert opining that absenteeism exceeding one day per month would not be tolerated). Because there is a reasonable possibility that the agency consultants may have altered their opinions if given the opportunity to review the entire medical record, it was error to afford those opinions greater weight than the Plaintiff's treating sources. *See West*, 2019 WL 211138, at *5; *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987) (remanding, in part, because non-examining agency consultant did not have plaintiff's complete medical record, including findings which may have altered his conclusions).

**Conclusion**

The Commissioner's Motion to Affirm is DENIED. The Plaintiff's Motion to Reverse or in the Alternative to Remand is GRANTED in part. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and to remand this matter to the Commissioner for rehearing pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner shall provide updated medical records to Dr. Rogers and Dr. Harvey, or another suitable consultant if either of them is not available, and obtain new opinions from them in light of their review of the updated records. In consideration of Drs. Rogers and Harvey's new opinions, the ALJ shall then reassess the weight to be given all medical opinions in this matter, to include APRN Dillon's July 2018 opinion. Finally, the ALJ shall reformulate the Plaintiff's RFC based upon these reassessments. Insofar as the Plaintiff has no past relevant work, a new hearing is also necessary to obtain testimony from a vocational expert as to the availability of jobs in the national economy for people with the Plaintiff's re-determined RFC. The ALJ shall then determine anew whether Plaintiff was disabled within the meaning of the Act at any time between March 9, 2014 and her 22nd birthday.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of September 2020.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE